MARK T. YOUNG (Bar No. 89951)
SAMUEL R.W. PRICE (Bar No. 255611)
DONAHOE & YOUNG LLP
25152 Springfield Court, Suite 345
Valencia, California 91355-1096
Telephone: 661.259.9000 / Facsimile: 661.554.7088
E-mail: myoung@donahoeyoung.com; sprice@donahoeyoung.com

Co-Counsel for Objecting Creditors
THEODORE KOHAN, ARIZONA TEMPE
TOWN LAKE, LLC, and BUSINESS TO
BUSINESS MARKETS, INC.

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>**NAMWEST, LLC, et al.,**<br><br>Debtors. | Chapter 11 Proceedings<br><br>Case Nos. 2:08-bk-13935-CGC; 2:08-bk-13954-GBN; 2:08-bk-13939-CGC; 2-08-bk-14022-GBN; 2:08-bk-14024-SCC; 2:08-bk-14025-JMM; 2:08-bk-14027-SSC; 2:08-bk-14031-CGC; 2:08-bk-14033-GBN; 2:08-bk-13972-CGC; 2:08-bk-14564-RTB<br><br>Jointly Administered Under<br>Case No. 2:08-bk-13935-CGC |
| This filing applies to:<br><br>☐ ALL DEBTORS<br>☒ SPECIFIC DEBTORS<br><br>**NAMWEST, LLC**<br>**NAMWEST-TOWN LAKES II, LLC**<br>**SWB ENTERPRISES, LLC** | **OPPOSITION TO "MOTION FOR ENTRY OF AN ORDER: (I) UNDER BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT WITH ROYA BOUCHERIAN, ETC.";  MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 10, 2009<br>Time: 10:00 a.m.<br>Location: Courtroom 601<br>230 North First Avenue<br>Phoenix, AZ 85003 |

Creditors THEODORE KOHAN ("Kohan"), ARIZONA TEMPE TOWN LAKE, LLC, ("ATTL") and BUSINESS TO BUSINESS MARKETS, INC. ("B2B") (collectively "the Kohan Group") hereby oppose the "Motion for an Order: (I) Approving Settlement Agreement with Roya Boucherian, etc." dated November 13, 2009 ("the Motion"). This Opposition is based on the facts

and grounds stated herein, in the accompanying Memorandum of Points and Authorities, and in the Declarations of Theodore Kohan ("Kohan Dec."), Michael C. McKay ("McKay Dec."), George D. Williams ("Williams Dec."), Richard Docter ("Docter Dec."), and Arch Stokes ("Stokes Dec.") filed concurrently herewith.

Dated: December 7, 2009                    DONAHOE & YOUNG LLP


By: /s/ Mark T. Young
MARK T. YOUNG
Co-Counsel for Objecting Creditors
THEODORE KOHAN, ARIZONA TEMPE TOWN LAKE, LLC, and BUSINESS TO BUSINESS MARKETS, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

The settlement with Roya Boucherian ("Boucherian") proposed by Debtors Namwest, LLC ("Namwest"), Namwest-Town Lakes II, LLC ("NTL II"), and SWB Enterprises, LLC ("SWB") in the Motion is not in the best interests of creditors of the Debtors' estates, and will spawn rather than settle litigation. The Settlement would transfer real property rights owned by NTL II – which were originally valued at $14 million by NTL II – for a mere $500,000. Further, the sale would be to a long-time associate of Ezri Namvar, with no opportunity for competitive bidding, and in the face of a proposed Plan that would pay all administrative and unsecured claims in full. Finally, approval of the proposed Settlement Agreement would effectively legitimize fraudulent liens, and thwart the imminent resolution of litigation in this Court, which is poised to resolve all issues relevant to this matter at little or no cost to the Debtors' estates; subsequent litigation would require initiation of new proceedings and service on Boucherian, a German citizen. In view of the upcoming trial in this Court, such delay and expense would be a highly inefficient waste of resources.

## II. Factual Background

The facts relating to the Settlement Agreement are complex. The Motion omits significant facts necessary to understand the basis for the Settlement Agreement. The Declarations of Theodore Kohan and Michael C. McKay accompanying this Opposition present the critical facts omitted in the Motion.

In summary, B2B acquired the right to purchase 4.88 acres of raw land in Arizona known as the "Club Rio Property" on October 4, 2004. In December 2004, the Kohan Group and Namvar had negotiated a transaction by which Kohan or an entity he controlled would have a 27% interest in a new entity, and Namvar would have a 73% interest in that entity, for development of the property. The rest of parcels comprising the property were purchased in December 2004 and January 2006. (Kohan Dec. ¶¶7-12).

Beginning in May 2006, and continuing through August 2008, Namco made a series of loans and collateral assignments ostensibly secured by the property. The last of these collateral

assignments (and the largest, at $27 million) was completed <u>after</u> state court litigation in Maricopa County Superior Court had been commenced, and a lis pendens recorded. (Kohan Dec. ¶¶13-19).

Litigation is now pending in this Court which is poised to resolve the disputed validity of the Boucherian deeds of trust. A discovery cutoff date has been set at February 15, 2010, and trial is anticipated for June or July 2010 (McKay Dec. ¶¶3-6).

None of the deeds of trust assigned by Namco to Boucherian were actually supported by any consideration. Further, the assignments to Boucherian were made under suspicious circumstances, in an attempt to remove valuable assets from being available to creditors (including the Kohan Group). (Kohan Dec. ¶¶20-22). The $2.78 million deed of trust upon which the Namwest's Trustee seeks to foreclose upon has been paid in full. (Kohan Dec. ¶¶23; McKay Dec. ¶7).

## III. ARGUMENT

### A. <u>Compromises Must Be Reasonable and in the Best Interest of the Estate</u>

#### 1. <u>Deference to the Debtors' Recommendation Is Not Unlimited.</u>

Compromises are favored only when the proposed compromise is in the best interest of the estate. In evaluating whether a compromise agreement is fair, reasonable and in the best interest of the estate, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. Cal. 1986).

A bankruptcy court must "amply" consider the various factors regarding the reasonableness of a settlement. In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988). "Broad as the bankruptcy court's power may be, it may not completely ignore a nonfrivolous objection [to a proposed settlement]." Id.

The settlement proposed by the Debtors would have a significant impact on all creditors in this case but a disproportionately devastating impact on the Kohan Group, amounting to irreparable harm. While the Debtors' business judgment is entitled to reasonable deference, the

best interests of creditors requires more than a debtor's *ipse dixit* or request for reliance on its judgment. See Plummer v. Chemical Bank, 668 F.2d 654 (2d Cir. 1982). Where a settlement is objected to, judicial findings and conclusions are necessary. Id. "[I]t is essential that every important determination in reorganization proceedings receive the informed, independent judgment of the bankruptcy court." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) (internal quotations and citations omitted).

Before a court can approve a settlement agreement over the objections of creditors, the court must find that the compromise is fair and equitable to the estate and creditors thereof. In re A & C Properties, 784 F.2d at 1381. There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the claim at issue. Id., 784 F.2d at 1382; TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-425. Here it is evident that the Debtors have not apprised the Court of all facts necessary for an intelligent and objective opinion of the claim at issue.

### 2. **The Proponent of a Proposed Settlement Has the Burden of Proof.**

The Debtors, as the party proposing the compromise, has the burden of persuading the court that the compromise is fair and equitable and should be approved. In re A & C Properties, 784 F.2d at 1383. Here, there is contentious litigation in Maricopa County Superior Court and in adversary proceedings in the Namwest Chapter 11 case in which the parties who one might expect to be in league with Namvar and his entities, and parties who are adverse to Namvar and his entities, are both actively contesting the legitimacy of the Boucherian interests. At a minimum, the Trustee should be required to prove, not merely assert, that the proposed deal is fair and reasonable. While the Court is the not required to conduct a "mini-trial" to determine whether to approve a settlement under Rule 9019, the proponent of the settlement is required to present admissible evidence in order to meet its burden of proof. In re Lion Capital Group, 49 B.R. 163, 190 (Bankr. S.D.N.Y. 1985). The decision of the Court on whether to approve a settlement must be an informed one, based on objective evaluation of evidence presented. In re Kopexa Realty

Venture Co., 213 B.R. 1020 (10th Cir. BAP 1997).

*Here, **not one scintilla of evidence** of any kind has been submitted in support of the Motion: there is not a single declaration, affidavit, request for judicial notice, deposition transcript, self-authenticating document, or other form of evidence whatsoever attached to or referenced in the Motion.*

Establishing that a settlement is "fair and reasonable" often requires the submission of a significant amount of evidence. For example, the Bankruptcy Court in A&C Properties held five days of hearings and based its ruling on the testimony adduced during those five days, 4,000 pages of transcripts, and a detailed cost-benefit analysis of the relative merits of pursuing or settling the various claims. A&C, *supra,* at 1381, 1383. Such evidence is needed for the Court to make the "informed, independent judgment" that does not rely merely on the urgings of a settlement proponent. In re AWECO, Inc., 725 F.2d 293, 299 (5th Cir. 1984). Here, such evidence is utterly lacking.

In re Arkoosh Produce, Inc., 2003 Bankr. Lexis 2222 (Bankr. D. Idaho 2003) is a case with strong factual parallels to those present here. In Arkoosh, a Chapter 7 trustee had asserted claims against former officers and shareholders of the debtor corporation and several related entities, which were the subject of multiple adversary proceedings. Eventually, the trustee filed a motion to approve a settlement. A creditor objected to the trustee's motion, contesting the adequacy of the consideration to be received by the bankruptcy estate under the proposed compromise, and suggesting that the terms of settlement were not reasonable. The creditor also challenged whether the trustee had adequately investigated the relevant facts before agreeing to settle. Finally, the creditor indicated that it would pay the bankruptcy estate more than that offered by the settling defendants, on similar terms. The settling defendants and the trustee replied to the objection, urging the Court to overrule the objection and approve the compromise.

The Court conducted a two-day evidentiary hearing on the trustee's motion. The Court concluded that the trustee was operating in good faith, but noted that the trustee is obligated to prove, not merely assert, that the settlement is fair and reasonable, and in the best interest of the bankruptcy estate; accordingly, the motion to approve the proposed settlement was denied.

The Debtors have submitted no evidence at all in support of the proposed settlement. Therefore, the Motion must be denied, or alternatively be set for evidentiary hearing after the Debtors produce enough evidence to establish a prima facie case for approval. As another alternative, the Kohan Group will, at no cost to the estate, prove that no consideration was provided for the deeds of trust that were ultimately assigned to Boucherian, provided that expected discovery is ordered so that a trial on these issues can take place in February 2010.

### 3. The Minimal Threshold Reasonableness of a Settlement Does Not Require Its Approval If the Settlement Unduly Prejudices Rights of Nonparties.

Upon being presented with adequate admissible evidence, the Bankruptcy Court then has the *discretion* to approve a settlement if it is reasonable. Approval at the baseline level of reasonableness, however, is not required. In re Lion Capital Group, 49 B.R. 163, 176 (Bankr. S.D.N.Y. 1985). Determining that a proposed settlement meets the even "minimal threshold of reasonableness" is simply not possible where the proponent has presented no evidence – only unsupported recitations of the settlement terms – to establish that even the threshold for the exercise of discretion has been met.

Moreover, **"[e]ven if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced."** Enodis Corp. v. Emplrs Ins. Co., 2007 U.S. Dist. LEXIS 97819, 21-22 (C.D. Cal. Mar. 12, 2007) (citing In re Devon Capital Management, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001); Consideration solely of the interests of the settling parties, such as complexity and uncertainty of litigation, expense, inconvenience and delay is not sufficient when the rights of others are impacted by the settlement.; if it were, every settlement would automatically pass Rule 9019 scrutiny. In re AWECO, Inc., 725 F.2d 293, 297-298 (5th Cir. 1984) (failure to consider the impact of a proposed settlement on the interests of third parties contravenes the requisite standard of fairness); In re Masters Mates & Pilots Pension Plan, 957 F.2d 1020, 1026 (2d Cir. 1992) (stating that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval.")).

It is clear that the approval of this settlement would severely prejudice the Kohan Group.

Even disregarding the interests of the Kohan Group, unsecured creditors of Namwest and NTL II do not benefit by the sale of estate assets originally valued at $14 million for $500,000, which will likely be dedicated to expenses of administration. Such creditors prefer to see the reorganization process completed rather than short-circuited by this settlement. (See, Williams Dec.; Docter Dec.; Stokes Dec.).

### 4. **Due to the Allegations that the Boucherian Liens Are Fraudulent Conveyances, this Settlement Requires a Higher Degree of Scrutiny Than a Normal Commercial Transaction.**

As detailed in Kohan's Declaration (¶¶20-21, 23), Kohan and Namwest have long contended that the Boucherian notes are not supported by consideration, and were given to siphon the value of the NTL I and NTL II Property away from creditors generally to Namvar's friend Boucherian. These are not normal loans, and on their face make no commercial sense. Approval of the Motion without the opportunity for to complete discovery in the adversary proceeding would effectively sanction the last-minute fraudulent conveyances orchestrated by Namvar.

Moreover, the creditors of each entity have an interest in assuring that Boucherian is not allowed to double-dip by seeking title to multiple properties worth $30 million for (at most) $9.5 million of debt. Boucherian has already obtained relief from stay in the Namco case (in Los Angeles) on the Club Rio Property. The settlement here would effectively give Boucherian the Wilde Porperty, for the same debt. At the very least, the inter-related settlements in this case and the Namco case in Los Angeles should be considered on a coordinated basis because it may be appropriate to require Boucherian to marshal her collateral (see 11 U.S.C. §544(a); California Civil Code §§2899, 3433; <u>Zellerbach Paper Co. v. Valley Nat'l. Bank of Arizona</u>, 18 Ariz. App. 301, 501 P.2d 570 (Ariz. 1972)).

Given the large stakes, serious allegations, and complicated connections with two other bankruptcy estates (Namco and Namvar), it would be improper for this settlement to be approved as if it were routine.

### 5. **The Impact of the Deal on Kohan Is Devastating.**

The reasons why the Kohan Group would be dramatically affected by the proposed

settlement are as follows:

      a.      The Kohan Group holds a 27% interest in NTL I and NTL II, owners of the Club Rio and Wilde Properties.

      b.      The Club Rio and Wilde Properties are subject to numerous liens in favor of Boucherian. The face amount of these liens far exceeds the actual values of the properties. (The properties were purchased for less than $12 million; the face amount of the liens recorded on the two properties is approximately $50 million).

      c.      Litigation is well underway in this Court, headed toward trial this summer (with discovery cutoff set for February 15, 2010, 67 days from the hearing) which will determine whether the Namco/Boucherian liens are or are not valid.

      d.      If the Namco/Boucherian liens are not valid, NTL I and NTL II have significant equity in the property; therefore, the Kohan Group's equity interests in NTL I and NTL II are highly valuable (several million dollars).

      e.      If the Namco/Boucherian liens are valid, NTL I and NTL II have no equity in any property. Therefore, the Kohan Group's equity interests in NTL I and NTL II are worthless, and the Kohan Group has nothing beyond unsecured claims for breach of contract and fraud against Namvar and others.

In other words, the validity of the Namco/Boucherian liens determines whether the Kohan Group has an asset worth several million dollars, or an asset worth only what the ultimate distribution to creditors of Namvar may be (probably pennies on the dollar). The proposed settlement short-circuits the determination of the Boucherian liens, and provides the estate with a fixed payment in an amount that even may be insufficient to pay all administrative claims.

### 6. **The Impact of the Deal on Other Creditors Is Significant.**

Under the proposed settlement, a significant asset will be sold to a Namvar associate, without benefit of competitive bidding, for less than 4% of the value of the asset originally scheduled by Namwest and NTL II. The proposal provides less for unsecured creditors than would be accomplished by at least one alternative (see Kohan's proposal at Section B below). Unsecured creditors independent of the Kohan Group oppose the settlement proposal, for this

reason (see Williams, Docter, and Stokes Decs.)

If the Court continues the hearing on this proposed settlement until discovery can be completed in the Namwest adversary proceeding, Kohan will have obtained (and will share with all of the interested parties) the results of that discovery. Creditors can then make a more informed decision on the appropriateness of the proposed settlement.

### B. As a §363(b) Sale, the Proposed Settlement Should Not Be Approved.

Notwithstanding the illegitimacy of the phony debt claims upon recorded shortly before these cases were filed which the settlement is based, the bargain-basement sale of estate property at the heart of the settlement is improper and must not be approved. The Debtors' arguments in support of the sale proposed in the Settlement Agreement under 11 U.S.C. §363 are insufficient. In their Verified Complaint against Boucherian (Adv. No. 2:08-ap-00926-CGC), Namwest and NTL II alleged that the notes assigned to Boucherian were unsupported by consideration and constituted fraudulent transfers. In essence, the Debtors simply ask the Court to rely on their business judgment, forget that a few months ago the Debtors were alleging in verified pleadings that the Boucherian deeds of trust were fraudulent, and provide no reason or evidence to suggest that their new (and 180º different) judgment is sound. On the contrary, it is evident that such judgment must be closely scrutinized. Of particular concern are the elements of "adequate price" and "good faith."

Case law has clearly established that "[t]he court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani), 325 B.R. 282, 288-289 (9th Cir. BAP 2005). In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) (citing Matter of Chung King, Inc., 753 F.2d 547 (7th Cir. 1985); In re Alpha Industries, Inc., 84 Bankr. 703, 705 (Bankr. Mont. 1988); 2 Collier on Bankruptcy. 15th ed. P363.03[1]).

It is apparent from the Motion that the Debtors entered into negotiations with Boucherian and Boucherian alone. The Debtors never consulted the Kohan Group about their "melting ice cube" problem, nor did they seek to sell the NTL II interests in a competitive bidding process, nor

did they try to work with the Kohan Group on its competing Plan – which would pay administrative expenses and unsecured creditors in full, fund the estate, complete the litigation against Boucherian at no cost to the Debtors, and provide the Debtors 40% of the net return on the sale of the properties.

The Debtors offer no evidence that the Boucherian offer is the best that the estates could reasonably achieve, nor could such an assertion be credibly made without first attempting to obtain competing offers. Undoubtedly, *any* consideration received by an estate is beneficial, at least to the first tier of administrative claimants. But the Motion seeks approval of a deal which is not even the best deal presently offered. In Arkoosh, *supra,* the Court held as follows:

> "While the Court has decided above that the settlement can not be approved on this record, because of the complex nature of the claims involved in this case and the ambiguous structure of the settlement proposal, the Court concludes it is necessary to discuss one other element of the proposal in particular. As explained above, there is a difference between a compromise under *Rule 9019*, where the trustee proposes to resolve mutual claims between the bankruptcy estate and settling parties, and the sale of an estate asset, where the trustee proposes to transfer a claim against a third party in exchange for money. *Goodwin, 292 B.R. at 421*. When a proposed settlement involves what *Goodwin* characterizes as the sale of a chose in action belonging to the bankruptcy estate, and if the facts surrounding the settlement suggest it is proper, *id. at 422 n.7*, the court must be sure the asset will not likely attract a higher price if offered to another bidder.
>
> [A]s written, the compromise actually amounts to a sale of the Glanbia claim. Because under *Goodwin* the Court must ensure the bankruptcy estate receives the highest price possible for the sale of this valuable asset, and because **Glanbia offered in open court to pay the Trustee substantially more than Kimmes for the bankruptcy estate's rights to pursue Glanbia**, and because the Trustee will not entertain Glanbia's "bid" for the transfer, this transaction can not be approved. The Trustee did not show the Court why the proposal submitted by Kimmes is better for the bankruptcy estate than Glanbia's offer. Absent any such showing, Trustee did not meet his burden of proving the proposed settlement is fair and equitable." (Emphasis added).

Here, the Kohan Group, through its Plan, is offering a better deal than proposed by the Debtors and Boucherian. In its Plan, the Kohan Group proposes to loan up to $600,000 to pay all allowed unsecured claims in full, pay off administrative expenses, and to obtain entitlements for the property. This loan will be paid when the property is sold, and the estate will then receive 40% of the net sale proceeds. The Kohan Plan does not require the significant waivers and

concessions of rights in the Boucherian offer.

There is at least one better offer – i.e., the Kohan Plan. Therefore, the Motion cannot be approved.

### C. Conclusion

"Creditors' objections to a compromise must be afforded deference. In addition, the bankruptcy court is obligated to preserve the rights of the creditors. In re A & C Properties, 784 F.2d at 1384 (internal citations omitted). In appropriate circumstances it is proper for a court to interfere with the debtor-in-possession's judgment "for the purpose of safeguarding the interest of parties concerned, such as creditors and bidders." In re Blue Coal Corp., 59 B.R. 157, 163 (Bankr. M.D. Pa. 1986); see also G-K Dev. Co. v. Broadmoor Place Invs., L.P. (In re Broadmoor Place Invs., L.P.), 994 F.2d 744, 745 (10th Cir. 1993) (approving the sale to an alternate bidder that was not recommended by the trustee).

The very purpose of F.R.Bankr.P. 9019 is to protect *other* creditors against bad deals made between a trustee (or debtor-in-possession) and a particular creditor. In re Fortran Printing, Inc., 297 B.R. 89, 96 (Bankr. D. Ohio 2003); In re Turner, 274 B.R. 675 (Bankr. W.D.Pa. 2002). The present compromise is a fantastic deal for Boucherian, and an easy deal for the Debtors and the administrative claims. But it is a bad deal for creditors generally, and a horrible -- and horribly unfair and unjust deal – for the Kohan Group.

The Motion should be denied, or alternatively continued until April 2010, pending completion of discovery in the adversary proceeding. As an additional alternative, if expedited discovery is ordered in the adversary proceeding, the Kohan Group would, at no cost to the estate, proceed to trial on the validity of the Boucherian liens in February 2010.

Dated: December 7, 2009         DONAHOE & YOUNG LLP

By: /s/ Mark T. Young
MARK T. YOUNG
Co-Counsel for Objecting Creditors
THEODORE KOHAN, ARIZONA TEMPE
TOWN LAKE, LLC, and BUSINESS TO
BUSINESS MARKETS, INC.

12
OPPOSITION TO "MOTION FOR ENTRY OF AN ORDER: (1) APPROVING SETTLEMENT, ETC."

COPY of the foregoing mailed/e-mailed this 7th day of December, 2009, to:

| | |
|---|---|
| Leslie A. Berkoff<br>Moritt Hock Hamroff & Horowitz LLP<br>400 Garden City Plaza, Suite 202<br>Garden City, NY 11530<br>lberkoff@moritthock.com<br>Representing Textron Financial Corporation | Kristen Rosenbeck<br>Mulcahy Law Firm, PC<br>3001 East Camelback Road Suite 130<br>Phoenix, Arizona 85016<br>krosenbeck@mulcahylaw.com<br>Representing Montecito Estates HOA |
| William Novotny<br>Paul S. Ruderman<br>Mariscal Weeks Mcintyre & Friedlander P.A.<br>2901 North Central Avenue, Suite 200<br>Phoenix, Arizona 85012-2705<br>william.novotny@mwmf.com<br>Representing Wang Electric, Inc. | Larry Lee Watson<br>U.S. Trustee's Office<br>230 North First Avenue, Suite 204<br>Phoenix, Arizona 85003-1706<br>larry.waton@usdoj.gov<br>connie.s.hoover@usdoj.gov<br>Representing U.S. Trustee |
| Michael C. McKay, Esq.<br>Schneider Wallace Cottrell Brayton<br>Konecky LLP<br>7702 E. Doubletree Ranch Road, Suite 300<br>Scottsdale, Arizona 85258<br>mmckay@schneiderwallace.com<br>Representing Theodore Kohan;<br>Arizona Tempe Town Lake, L.L.C.;<br>Business to Business Markets, Inc. | Maricopa County Treasurer<br>c/o Madeleine L. Wanslee<br>Gust Rosenfeld, PLC<br>201 E. Washington, Suite 800<br>Phoenix, Arizona 85004-2327<br>mwanslee@gustlaw.com<br>rms@gustlaw.com<br>Representing Maricopa County Treasurer |
| Edward M. Zachary, Esq.<br>Robert L. Miller, Esq.<br>Bryan Cave LLP<br>Two North Central Avenue, Suite 2200<br>Phoenix, Arizona 85004-4406<br>kyle.hirsch@bryancave.com<br>edward.zachary@bryancave.com<br>ccbeckstead@bryancave.com<br>pxdocket@bryancave.com<br>rjmiller@bryancave.com<br>skmceleeney@bryancave.com<br>Representing M&I Marshall & Ilsley Bank | Christopher H. Bayley<br>Lori A. Lewis, Esq.<br>Snell & Wilmer, L.L.P.<br>One Arizona Center<br>400 East Van Buren<br>Phoenix, AZ 85004-0001<br>cbayley@swlaw.com<br>llewis@swlaw.com<br>jamaskovich@swlaw.com<br>docket@swlaw.com<br>Representing Roya Bouchehrian |

DONAHOE & YOUNG LLP
25152 SPRINGFIELD COURT, SUITE 345
VALENCIA, CALIFORNIA 91355-1096
TELEPHONE (661) 259-9000

| | |
|---|---|
| Jared G. Parker<br>Deconcini McDonald Yetwin & Lacy, P.C.<br>7310 North 16th Street, Suite 330<br>Phoenix, Arizona 85020<br>jparker@dmylphx.com<br>dbryant@dmylphx.com<br>Representing Official Joint<br>Committee of Unsecured Creditors | Steven M. Cox<br>Waterfall Economidis Caldwell<br>Hanshaw & Villamana, P.C.<br>5210 East Williams Circle, Suite 800<br>Tucson, Arizona 85711<br>amoore@wechv.com<br>crholinger@wechv.com<br>Representing GMAC |
| Chad Philip Miesen<br>Carpenter, Hazlewood, Delgado & Wood PLC<br>1400 East Southern Avenue, Suite 400<br>Tempe, Arizona 85282<br>chad@carpenterhazelewood.com<br>debbie.young@carpenterhazle.com<br>james@carpenterhazlecom<br>Representing 101 Plaza North<br>Office Condominium Association | Christina M. Harper<br>Office of the Attorney General<br>Tax Bankruptcy Collection Section<br>1275 West Washington Street<br>Phoenix, Arizona 85007<br>Christina.harper@azag.gov<br>Representing Arizona Department of Revenue |
| Edward Rubacha<br>Jennings Haug & Cunningham<br>2800 North Central Avenue, Suite 1800<br>Phoenix, Arizona 85004<br>er@jhc-law.com<br>Representing Danny White Painting, Inc. | Blair Korschun<br>Bankruptcy Servicer for Compass Bank<br>Ascension Capital Group, Inc.<br>P.O. Box 201347<br>Arlington, Texas 76006<br>ecfnotices@ascensioncapitalgroup.com |
| Arizona Department of Revenue<br>Bankruptcy & Litigation<br>1600 West Monroe, 7th Floor<br>Phoenix, Arizona 85007-2612 | Scott Roberts Architectural Illustrator<br>361 South Rosewood Lane<br>Phoenix, Arizona 85054 |
| Lexon Insurance Company<br>256 Jackson Meadows Drive, Suite 201<br>Hermitage, Tennessee 37076 | The Mahoney Group<br>20410 North 19th Avenue, Suite 170<br>Phoenix, Arizona 85027-1406 |
| Frederick Charles Thomas, Esq.<br>Smith & Craven, PLLC<br>P.O. Box 11888<br>Glendale, Arizona 85318-1888<br>f.thomas@smithcraven.com<br>Representing J-Rock Drywall, Inc. | Samuel H. Becker<br>Blank Rome, LLP<br>One Logan Square<br>130 N. 18th Street<br>Philadelphia, Pennsylvania 19103<br>(215) 832-5527 (fax)<br>Becker@blankrome.com<br>Representing the West Deptford Township |

DONAHOE & YOUNG LLP
25152 SPRINGFIELD COURT, SUITE 345
VALENCIA, CALIFORNIA 91355-1096
TELEPHONE (661) 259-9000

DONAHOE & YOUNG LLP
25152 SPRINGFIELD COURT, SUITE 345
VALENCIA, CALIFORNIA 91355-1096
TELEPHONE (661) 259-9000

| | |
|---|---|
| American Express Bank FSB<br>c/o Becket and Lee LLP<br>P. O. Box 3001<br>Malvern, PA 19355-0701 | James B. Ball<br>Poli & Ball, P.L.C.<br>2999 North 44th Street, Suite 500<br>Phoenix, Arizona 85018<br>ball@poliball.com<br>garcia@poliball.com<br>fern@ppoliball.com<br>Representing Compass Bank |
| Lindsi M. Weber<br>Gallagher & Kennedy, Pa<br>2575 East Camelback Road<br>Phoenix, Arizona 85016<br>lindsi.weber@gknet.com<br>dal@gknet.com<br>maricella.nunez@gknet.com<br>Representing New Cardinals Stadium, LLC | Evans O'Brien<br>SNELL & WILMER L.L.P.<br>One Arizona Center<br>400 E. Van Buren<br>Phoenix, AZ 85004-2202<br>eobrien@swlaw.com<br>jrogalla@swlaw.com<br>docket@swlaw.com<br>Representing Arizona Sports Foundation |
| Todd M. Adkins<br>tadkins@jsslaw.com<br>bstevens@jsslaw.com<br>dsharp@jsslaw.com<br>mgoudrewa@jsslaw.com<br>Representing Counter-Defendant<br>Namwest, LLC | Hillary L. Barnes, Esq.<br>Vishnu R. Jonnalagadda, Esq.<br>Quarles & Brady LLP<br>Two North Central Avenue<br>Phoenix, AZ 85004-2391<br>Hilary.barnes@quarles.com<br>Vishnu.jonnalagadda@quarles.com<br>Representing The Township of West Deptford |
| Patrick A. Clisham<br>pac@engelmanberger.com<br>cks@engelmanberger.com<br>kac@engelmanberger.com<br>Representing KS, LLC | David M. Poitras, P.C.<br>Jeffer, Mangels, Butler & Marmaro LLP<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067<br>dpoitras@jmbm.com<br>Representing Chapter 11 Trustee for Creditor Namco Capital Group, Inc. |
| Howard C. Myers<br>Burch & Cracchiolo, P.A.<br>702 E. Osborn, Suite 200<br>P.O. Box 16882<br>Phoenix, AZ 85011<br>hmeyers@bcattorneys.com<br>bchesley@bcattorneys.com<br>Representing PDS/JSC-31, LLC | Joel F. Newell<br>Carmichael & Powell, P.C.<br>7301 North 16th Street, Suite 103<br>Phoenix, AZ 85020<br>j.newell@cplawfirm.com<br>Representing Raystone Investments, Inc. |

**DONAHOE & YOUNG LLP**
25152 SPRINGFIELD COURT, SUITE 345
VALENCIA, CALIFORNIA 91355-1096
TELEPHONE (661) 259-9000

| | |
|---|---|
| Christopher C. Simpson<br>Stinson Morrison Hecker LLP<br>1850 N. Central Avenue, Suite 2100<br>Phoenix, AZ 85004-4584<br>csimpson@stinson.com<br>Representing Bradley D. Sharp, Ch. 11 Trustee<br>of the Bankruptcy Estate of the Namco Capital<br>Group | Todd A. Burgess<br>todd@burgess@gknet.com<br>Representing Defendant<br>Gramercy Investment Trust |
| Kerry Hodges<br>khodges@jsslaw.com<br>sbermingham@jsslaw.com<br>Representing Debtor<br>Namwest, LLC | Kami M. Hoskins<br>hoskinsk@gtlaw.com<br>Representing Interest Party<br>Gramercy Investment Trust |
| Vishnu R. Jonnalagadda<br>srivera@nussbaumgillis.com<br>Representing Creditor<br>The Township of West Deptford | Monserrat Morales<br>mmorales@ppwkllp.com<br>Representing Interested Party<br>Ezri Namvar |
| Wesley Denton Ray<br>wray@polsinelli.com<br>Representing Debtor<br>Nawest, LLC | Michael R. Walker<br>ecfdocket@swazlaw.com<br>mwalker@swazlaw.com<br>Representing Defendant<br>David Cutler |

by: /s/ Sherril L. Young